**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Petitioner-Appellee,

v.                                                          No. 98-6197

MICHAEL JOSEPH BEAN, JR.,
Respondent-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-963-5-BR)

Submitted: September 22, 1998

Decided: October 29, 1998

Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William Arthur Webb, Federal Public Defender, G. Alan DuBois,
Assistant Federal Public Defender, Raleigh, North Carolina, for
Appellant. Janice McKenzie Cole, United States Attorney, Anne M.
Hayes, Barbara D. Kocher, Michael D. Brendenberg, Special Assis-
tant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Michael Joseph Bean, Jr., appeals from the district court's order finding that he suffers from a mental disease or defect requiring custody for care or treatment in a suitable facility pursuant to 18 U.S.C. § 4245 (1994). Finding no error, we affirm.

In 1989, Bean was convicted of bank robbery and sentenced to 210 months imprisonment. Since his incarceration in 1989, Bean was transferred eleven times to various penitentiaries for behavioral problems. In 1997, after he began exhibiting behavioral disruptions attributed to psychotic decompensation of his mental state, Bean was transferred from the United States Penitentiary in Terre Haute, Indiana ("USP-Terre Haute") to the Federal Correctional Institution in Butner, North Carolina ("FCI-Butner"). Shortly after his arrival at FCI-Butner, the Government filed a motion to commit Bean to the custody of the Attorney General for psychiatric care and treatment pursuant to § 4245. After conducting a hearing, the district court ordered that Bean be committed to the custody of the Attorney General.

On appeal, Bean contends that there was insufficient evidence to demonstrate that he was mentally ill. A person may be committed under § 4245 only if the district court finds by a preponderance of the evidence that the inmate suffers from a mental disease or defect which requires custody for care or treatment in a suitable facility. See United States v. Baker, 45 F.3d 837, 840 (4th Cir. 1995). We review the district court's determination for clear error. See United States v. Steil, 916 F.2d 485, 487 (8th Cir. 1990).

At the hearing, Bean's treating psychiatrist, Dr. Bryon Herbel, testified on behalf of the Government. Dr. Herbel testified that he conducted a psychiatric evaluation of Bean consisting of interviews with

2

Bean, observations of his behavior, and a review of his medical and correctional records and report. Dr. Herbel concluded that Bean suffered from delusional disorder, mixed grandiose, perceptory type. Dr. Herbel's psychiatric evaluation revealed that Bean had a history of mental illness.

Since his incarceration for the instant offense, Bean spent most of his time in segregation because he claimed that his life was in danger from other inmates. Bean was frequently insolent and disruptive, necessitating the frequent transfers among various facilities. From January 1991 to October 1997, Bean received 122 disciplinary infractions. On several occasions, the mental health staff found Bean to be incompetent to participate in the disciplinary hearings or found him not to be responsible for infractions due to mental illness. Bean expressed delusions and grandiose preoccupations. Bean claimed that he was being threatened and assaulted by officers, that he had been hypnotized, and that his food was drugged. Bean's incarceration was also marked by violent behavior. He physically assaulted staff members and threatened the warden's life. He claimed that he was married to a female staff member and that other staff members were interfering in their marital relationship. Bean also claimed that he was a published playwright who was involved in writing several television shows.

Bean was transferred to FCI-Butner due to the decompensation of his mental illness, including delusions of grandeur and persecution of psychotic proportion, neglect of personal hygiene, urinating on himself, and displaying a hostile and aggressive manner towards staff. Upon his arrival at FCI-Butner, Bean was hostile and aggressive and accused the staff of conspiring to murder him in order to prevent him from producing his television series. Bean was placed in four-point restraints and was given an anti-psychotic medication. Dr. Herbel recommended that Bean receive comprehensive psychological treatment including antipsychotic medication and rehabilitation programming.

Further evidence presented at trial included a psychiatric evaluation by Dr. Billy Royal, conducted at the request of Bean's counsel. Dr. Royal concluded that Bean suffered from schizoaffective disorder. Dr. Royal stated that Bean has a history of mental illness, manifesting itself as early as childhood or adolescence. Dr. Royal concluded that

3

Bean experiences delusions and hallucinations, and he recommend that Bean be treated with anti-manic or anti-psychotic medication.

In sum, the only mental health experts to address the issue, Drs. Herbel and Royal, are in full agreement that Bean needs psychiatric treatment at a mental hospital. Bean offers only bald assertions that such commitment is unnecessary. We conclude that the district court did not clearly err in finding that Bean suffers from a mental disease or defect necessitating custody for care and treatment. See Baker, 45 F.3d at 840.

Accordingly, the order of the district court is affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4